IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 15-209 |
| | : | |
| EDWIN JIMERSON | : | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                          **January 25, 2021**

Defendant Edwin Jimerson, who is currently serving a 180-month sentence, moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Jimerson seeks a reduction of his sentence to time served asserting the coronavirus disease 2019 (COVID-19) pandemic combined with his asthma, sleep apnea, and prior infection with COVID-19, which he contends places him at an increased risk of harm from the virus, are extraordinary and compelling circumstances justifying his release. The Government opposes the motion because it contends Jimerson does not suffer from a high-risk condition warranting his release and because Jimerson is a danger to the community. Because Jimerson has not presented extraordinary and compelling circumstances, and because the Court finds he is a danger to the community, the Court will deny his motion.

## BACKGROUND

On September 25, 2017, Jimerson pleaded guilty to three counts of robbery which interferes with interstate commerce, in violation of 18 U.S.C. § 1951(a), and one count of using, carrying, and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Jimerson was sentenced to 180 months' incarceration. Jimerson is serving his term at Federal Correctional Institution (FCI) Fort Dix in New Jersey. His anticipated release date is January 19, 2028.

Since Jimerson's sentencing, much has changed. Due to COVID-19, a novel and highly contagious respiratory virus, the United States (and the world) has confronted a rapidly changing public health crisis that has reached the scale of a global pandemic. The virus commonly causes fever, coughing, and shortness of breath, amongst a wide range of other symptoms. *See Symptoms of Coronavirus*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/symptoms-testing/symptoms.html (last updated Dec. 22, 2020). To date, the virus has infected 24,876,261 people in the United States and resulted in 416,010 deaths. *See United States COVID-19 Cases and Deaths by State*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last updated Jan. 21, 2021).

Some populations, including the elderly and immunocompromised, are at a higher risk of developing serious complications upon exposure to the virus. The CDC has identified people of any age who have serious underlying medical conditions as those who are also at a higher risk for severe illness. *See People At Increased Risk*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last updated Jan. 4, 2021). High risk underlying medical conditions include, chronic kidney disease, serious heart conditions, severe obesity, sickle cell disease, cancer, and immunocompromised conditions from smoking, bone marrow and organ transplantation, immune deficiencies, or weakening medications. *See id*.

Because COVID-19 is highly contagious and spreads primarily through person-to-person contact, its existence has dramatically affected all realms of life. Federal, state, and local public health authorities have advised certain precautions be taken to avoid exposure and prevent the spread of the virus. In most states, individuals have been directed to stay at home unless engaging

in an essential activity or providing life-sustaining or government services. Individuals are also encouraged to wear face masks, avoid gathering indoors, and to socially distance themselves from others.

In light of the precautions necessary to prevent the virus' spread, COVID-19 poses a unique challenge to the prison system. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last updated Dec. 31, 2020). Nevertheless, in response to the COVID-19 pandemic, the BOP has implemented several protocols to protect the health and safety of the inmates, staff, and general public from the spread of the virus. The BOP's efforts include quarantining new inmates at the facility until they are cleared, screening inmates by health services prior to placement, suspending visits, and significantly decreasing the traffic of individuals entering the facilities. *See BOP Implementing Modified Operations*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last updated Nov. 25, 2020).

Jimerson, who contends the BOP's efforts are insufficient, sent a letter requesting compassionate release from the warden of FCI Fort Dix on March 30, 2020, and his request was denied. Jimerson then filed the instant pro se motion for compassionate release on June 9, 2020. Jimerson states he suffers from asthma and sleep apnea, which he argues places him at high risk of severe illness should he contract COVID-19. Jimerson supplemented his motion on November 22, 2020, to indicate he had contracted COVID-19. He is currently 30 years old.

The Government opposes Jimerson's motion, arguing he does not present extraordinary and compelling circumstances to justify his release. In addition, the Government contends Jimerson is a danger to the community which prevents his release.

**DISCUSSION**

The Court will deny Jimerson's motion because he has failed to demonstrate extraordinary and compelling reasons warranting his release and he is a danger to the community. Pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, the Court may modify a term of imprisonment on the defendant's motion after the defendant has exhausted his administrative remedies. In relevant part, § 3582(c)(1) provides that a court

> may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Congress, however, did not define the term "extraordinary and compelling reasons," except to state that "[r]ehabilitation . . . alone" does not suffice. 18 U.S.C. § 944(t). Rather, Congress delegated the authority to define "extraordinary and compelling reasons" to the U.S. Sentencing Commission.

Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a)," that—
>
> > (1)     (A)     Extraordinary and compelling reasons warrant the reduction; . . .
> >
> > (2)     the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> >
> > (3)     the reduction is consistent with this policy statement.

Application Note 1 to § 1B1.13 enumerates three specific reasons that qualify as "extraordinary and compelling" based on the medical condition, age, or family circumstances of the defendant.

4

U.S.S.G. § 1B1.13 n.1(A)–(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." [1] *Id.* n.1(D).

To grant Jimerson's motion, the Court must find that (1) extraordinary and compelling reasons warrant the reduction, (2) Jimerson is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g), and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) warrant the reduction.[2] In light of Jimerson's medical conditions, criminal history, and his conduct in these crimes, the Court is not persuaded he has demonstrated extraordinary and compelling circumstances, or that he is not a danger to the community. The Court will thus deny his motion.

---

[1] Interpreting this application note in light of recent amendments to the compassionate release statute, a majority of the district courts that have considered the issue have concluded that a *court* (not just the BOP) may independently determine whether extraordinary and compelling reasons, other than the reasons listed in the policy statement, exist in a particular case. *See United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020) (collecting cases). At the time the application note was drafted, only the Director of the BOP could move for compassionate release on an inmate's behalf. In December 2018, however, "the First Step Act amended § 3582(c)(1)(A) to allow prisoners to directly petition courts for compassionate release, removing the BOP's exclusive 'gatekeeper' role." *Id.* at 396. The Sentencing Commission has not updated the policy statement to account for this statutory change, and the policy statement is clearly outdated in some respects, as it continues to track the former statutory language permitting a court to reduce a term of imprisonment only "[u]pon motion of the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 & cmt. n.4. Given the changes to the statute, numerous courts have found the policy statement "does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *Rodriguez*, 451 F. Supp. 3d at 397 (alteration in original) (citation omitted) (collecting cases). A minority of courts have found otherwise. *See id.* at 398 (collecting cases). Assuming the Court has the authority to find extraordinary and compelling circumstances under the catch-all provision, the Court does not find such circumstances here. Therefore, the Court need not decide this issue.

[2] The Court must also find the reduction is otherwise consistent with the policy statement. In light of its analysis of the other factors, the Court need not address this factor.

The only applicable extraordinary and compelling reason here is Application Note 1(D)'s catch-all provision. Jimerson argues extraordinary and compelling reasons exist for his release due to the COVID-19 pandemic and him being a high-risk individual vulnerable to COVID-19 because of several medical conditions. The Government argues Jimerson does not present any basis for compassionate release because the general threat of COVID-19 is not a basis for release and his medical conditions do not make him high-risk for severe illness due to COVID-19 and are well-controlled at FCI Fort Dix. The Court agrees with the Government. The COVID-19 pandemic and Jimerson's claimed medical conditions do not rise to the level of extraordinary and compelling reasons justifying for his release.

At the outset, Jimerson's generalized concern regarding COVID-19 and the BOP's efforts to contain the virus are insufficient to justify compassionate release. In *United States v. Raia*, the Third Circuit held "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." 954 F.3d 594, 597 (3d Cir. 2020). As a result, Jimerson's generalized concern about COVID-19 and the BOP's efforts in containing the virus at FCI Fort Dix is insufficient by itself to justify compassionate release. The Court therefore turns to Jimerson's medical conditions to determine if he is a high risk of developing serious complications from COVID-19 creating extraordinary and compelling reasons that warrant his release.

Even when considering the COVID-19 pandemic, Jimerson's medical conditions, including asthma, sleep apnea, and a prior case of COVID-19, do not present extraordinary and compelling reasons for his release. The Center for Disease Control (CDC) lists the medical conditions that are high risk for severe illness from COVID-19. Not one of Jimerson's claimed

conditions is on the CDC's high-risk list. *See People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Dec. 29, 2020). Jimerson supplemented his motion in November, 2020, to state he had in fact contracted COVID-19 at FCI Fort Dix. However, "the risk of re-infection after a prior positive test for COVID-19 is not a basis for compassionate release." *United States v. Munford*, No. 15-376-7, 2021 WL 111863, at *4 (E.D. Pa. Jan. 12, 2021); *see also United States v. Wiltshire*, No. 11-310, 2020 WL 7263184, at *6 (E.D. Pa. Dec. 9, 2020) (denying compassionate release where defendant had already contracted COVID-19).

Without more, Jimerson's claimed medical conditions and the COVID-19 pandemic are not extraordinary and compelling circumstances warranting his release at this time. *See United States v. Bermudez*, No. 05-044-15, 2020 WL 7338556, at *4 (E.D. Pa. Dec. 14, 2020) (denying compassionate release where defendant had sleep apnea and asthma, among other conditions).

Regardless of whether Jimerson presents an extraordinary and compelling circumstance to consider his release, the Court finds him a danger to the community preventing his release as well. Section 3142(g) sets out the factors courts must consider including "the nature and circumstances of the offense charged," "the history and characteristics of the person," including "the person's character, physical and mental condition, family ties, . . . community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). These factors weigh in favor of finding Jimerson a danger to the community.

Jimerson's instant offenses involved robbing three different cellphone stores at gunpoint in April 2015. At the first robbery, he pointed a firearm at a store employee with his finger on the trigger and demanded money from the store's register. At the second robbery, he again pointed a firearm at a store employee and demanded money from the register. At the third robbery, he showed a store employee an outline of his firearm and demanded money from the register. When Jimerson was stopped and searched, the apprehending officer recovered a .38 revolver, loaded with five live rounds of ammunition.

Jimerson pleaded guilty to four counts stemming from the three robberies, including using, brandishing, and carrying a firearm in relation to a crime of violence. Further, he has served just over one third of his sentence, and release at this juncture would not reflect the seriousness of the offense, promote respect for the law, or provide just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). Given the three serious and violent offenses Jimerson engaged in, he poses a danger to the community and the Court will deny his motion for compassionate release on this basis as well. *See United States v. Wilson*, No. 14-209-1, 2020 WL 7872628, at *5 (E.D. Pa. Dec. 31, 2020) (denying compassionate release because defendant was a danger to the community in light of his conviction for armed robbery).

**CONCLUSION**

In conclusion, because Jimerson has failed to demonstrate extraordinary and compelling reasons warranting his release, and he poses a danger to the community, the Court will deny his motion for compassionate release pursuant to § 3582(C)(1)(A).

An appropriate order follows.

BY THE COURT:

 /s/  Juan R. Sánchez
Juan R. Sánchez, C.J.